**FILED**
**Oct 13, 2020**
**02:44 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| JOHN WADE, | ) | Docket No. 2019-06-1230 |
| Employee, | ) | |
| v. | ) | |
| KARR TRANSPORTATION, INC., | ) | |
| Employer, | ) | State File No. 11197-2019 |
| And, | ) | |
| ARCH INSURANCE, | ) | |
| Carrier. | ) | Judge Joshua Davis Baker |

---

### EXPEDITED HEARING ORDER DENYING BENEFITS

---

The Court held an expedited hearing on January 29, 2020, to consider Mr. Wade's request for temporary disability and medical benefits in light of Karr's asserted defenses of intoxication, violation of a safety rule, and intentional act. For the reasons below, the Court holds that Mr. Wade would not likely prevail at a hearing on the merits due to his violation of safety rules and denies the requested benefits.

### Claim History

Mr. Wade is a U.S. Army veteran who drove a tank in combat in the Middle East during several military conflicts. His Army training and the posttraumatic stress disorder (PTSD) that he developed as a result of his time in the military impacted the proof in this case.

Mr. Wade served in Iraq where he drove tanks and armored vehicles through streets that were often loaded with improvised explosive devices placed to harm the vehicle and the soldiers within. He further explained that enemy troops used wounded children to encourage the vehicles to stop and assist. When the vehicle stopped and the soldiers exited, the enemy troops would open fire on them as they moved to assist the wounded child. Mr. Wade lost several of his military comrades in these ambushes. To avoid ambush, he and his team had to make tactical decisions, which resulted on occasion in harm to the children the enemy troops used to encourage the U.S. troops to stop and assist.

After his discharge, Mr. Wade tried to find work. He worked several jobs over the years, but his PTSD and depression impeded his ability to keep a steady job. He also began using cocaine and drinking alcohol and made several unsuccessful suicide attempts.

Eventually Mr. Wade obtained his commercial driver's license and went to work for Karr Transportation as a driver. Karr gave him an employee handbook. The handbook prohibited the possession of alcohol while on Karr property or when conducting business for Karr. Additionally, the handbook required that all drivers wear seat belts "while the vehicle is in operation." Bob Gale, Karr's safety director, testified that Mr. Wade acknowledged receiving the employee manual. He also affirmed the seat belt and alcohol policies and testified Karr enforced both policies and terminated drivers for violations.

Mr. Wade suffered severe injuries in a trucking accident on August 23, 2018. Mr. Wade and the defense witnesses gave conflicting testimony about the cause and circumstances of the accident.

According to Mr. Wade, he stopped overnight at a truck stop just north of downtown Nashville the night before the accident to take his mandatory rest period. After stopping, he went into the store and purchased a six-pack of beer and took it back to the cab of his truck. After drinking one, he said he relaxed in his truck to wait out his rest period.

Another witness told a different story. Eric Beers, Karr's district manager and son of its owner, testified that all trucks are equipped with GPS trackers, and the tracker on Mr. Wade's truck showed he left the truck stop and drove his truck all the way to Murfreesboro before returning to the truck stop in north Nashville. Mr. Beers tracked him the following morning and found him parked at a hotel near the truck stop. Mr. Beers recounted two other people near Mr. Wade's truck. Mr. Wade denied there was anyone near the truck with him and said he stopped at the motel because the brakes on his truck were malfunctioning.

After this encounter, Mr. Wade drove his truck toward Smyrna to make his delivery with Mr. Beers following behind. Mr. Wade exited the interstate onto Sam Ridley Parkway. After traveling a short distance, the truck went off the road and crashed into a tree. The crash resulted in extensive injuries, including the amputation of part of his leg.

Mr. Gale came to the crash site and observed two full cans of beer that officers had found and placed in the truck's cab. He said Mr. Wade's possession of the alcohol violated company policy.

Rafael Bello, a police officer investigating the accident, said in an affidavit that there was "a strong odor of alcohol in the truck," empty beer cans, and drug paraphernalia. The officer also stated nothing showed Mr. Wade turned the truck to avoid a collision. The

2

officer investigated the accident as a possible suicide attempt. After the accident, Mr. Gale contacted Mr. Wade's former girlfriend and told her about it. She asked him, "Did he do it on purpose?"

Camera footage from inside the truck at the time of the accident showed that Mr. Wade was not wearing his seat belt. In his testimony, Mr. Wade said he purposely took off his seat belt because his commanding officers in his military training told him to unbuckle his seat belt if he expected his vehicle to crash so that he could safely exit the vehicle or abandon it before the crash if necessary. Mr. Wade said that the brakes from the truck were not working correctly and, knowing he would crash, he followed his training and removed his seat belt.

Mr. Beers, also a veteran who served in a capacity similar to Mr. Wade's, said no one trained him to remove his seat belt in anticipation of a vehicle accident. He also said drivers are required to report any maintenance problems immediately, and the driver will be sent to the nearest location to fix the problem. Mr. Beers found no record of brake problems with Mr. Wade's truck in the maintenance history.

## Findings of Fact and Conclusions of Law

At an expedited hearing, Mr. Wade must provide sufficient evidence to show that he is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2019). The Court finds he failed to carry this burden.

Mr. Wade suffered serious injuries when he crashed his truck, which accident he claims occurred due to faulty brakes. Karr maintains that Mr. Wade intentionally crashed the truck after removing his seat belt in a suicide attempt. Karr argues his intentional act of crashing the truck and violation of safety rules by removing his seat belt and having beer in the truck bars his claim.

Karr's defense lies in employee misconduct. Tennessee workers' compensation law provides that "no compensation shall be allowed for an injury or death due to the employee's . . . intentional self-inflicted injury [or] . . . willful failure or refusal to use a safety device[.]" Tenn. Code Ann. § 50-6-110(a)(2) and (a)(4). As these are affirmative defenses, Karr bears the burden of proof.

Karr maintains that Mr. Wade intentionally crashed the truck in an attempted suicide. This allegation is compelling, as Mr. Wade had a documented mental health condition and history of prior suicide attempts. Under the stress of Mr. Beers finding him at the hotel that morning and Mr. Wade having alcohol and drug paraphernalia in the truck in violation of Karr's safety rules, a suicide attempt was not out of the question. This supposition is further supported by the lack of any credible evidence that the truck had

3

brake problems, Officer Bello's statement that the accident was investigated as a possible suicide attempt, and Mr. Wade's former girlfriend's reaction to the news of the accident.

However, whether Mr. Wade acted intentionally or not, he violated safety rules by unbuckling his seat belt before the accident and by having alcohol in the truck. To show Mr. Wade engaged in willful misconduct by violating a safety rule, Karr must prove: (1) that Mr. Wade had actual, as opposed to constructive, notice of the rule; (2) that he understood the danger involved in violating the rule; (3) that Karr practiced bona fide enforcement of the rule; and (4) that Mr. Wade lacked a valid excuse for violating the rule. *Mitchell v. Fayetteville Pub. Utilities*, 368 S.W.3d 442, 452-53 (Tenn. 2012).

Karr proved Mr. Wade received a copy of the manual requiring seat belt use, so he had actual notice of the rule. Mr. Gale provided unrefuted testimony that Karr enforced the rule.

As for understanding the danger involved in violating the seat belt rule and Mr. Wade's excuse for the violation, the Court also finds these factors in Karr's favor. The danger inherent in not wearing a seat belt is obvious, given the possibility of ejection and further injury by a person's body moving on impact. The Court does not find Mr. Wade's testimony that his military training taught him to remove his seat belt in the event of an accident persuasive. Even if he had received that military training, Mr. Wade was working for Karr, not the military, at the time of the accident, and Karr required him to wear a seat belt. He therefore had no valid excuse for removing it.

Mr. Wade also had actual notice he could not have alcohol in the cab of the truck and did so anyway. He knew of the dangers associated with drinking and driving and had no valid excuse for carrying the alcohol. While the evidence is insufficient to show that he was intoxicated when the accident occurred, the mere possession of the alcohol constituted a safety violation.

Because the Court finds that Mr. Wade violated safety rules by failing to wear his seat belt and carrying alcohol in the truck, the Court holds he is unlikely to prevail at a hearing on the merits in his requested benefits.

It is **ORDERED** as follows:

1. Mr. Wade's request for temporary disability and medical benefits is denied.

2. This case is set for a status conference on **Monday, December 14, 2020**, at **9:00 a.m. (CST).** The parties must call 615-741-2113 to participate. Failure to call might result in a determination of issues without the party's participation.

**ENTERED October 13, 2020.**

_____

**Joshua Davis Baker, Judge**
**Court of Workers' Compensation Claims**

APPENDIX

Exhibits:

1. Mr. Wade's Affidavit
2. Letter from Dr. Melissa Klein
3. Letter from Dr. Clay Kelly
4. Wage Statement
5. First Report of Injury
6. Accident Video
7. Rafael Bello Affidavit
8. Karr's Alcohol and Drugfree Workplace Policy
9. Karr's Safety and Accident Policy
10. Karr's Seat belt Policy
11. Karr's Alcohol and Drug Testing and Enforcement Policy
12. Signed Employee Policy Receipt Acknowledgement
13. Medical Records
14. Email
15. Photograph
16. Maintenance Bill
17. GPS Report
18. Photograph
19. Photograph
20. Photograph

Technical Record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on October 13, 2020.

| Name | Certified Mail | Fax | Email | Service sent to: |
|------|----------------|-----|-------|------------------|
| Christopher Kim Thompson, Employee's Attorney | | | X | kim@thompsonslawoffice.com |
| John Thomas Feeney, Taylor R. Pruitt, Employer's Attorneys | | | X | johntfeeney@feeneymurray.com trp@feeneymurray.com |

_____
**Penny Shrum, Clerk**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

6



Expedited Hearing Order Right to Appeal:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____  ☐ Motion Order filed on _____

☐ Compensation Order filed on_____  ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 ____.

_____
*[Signature of appellant or attorney for appellant]*